### WILLIAM SCULLY v. J. H. PORTER.

#### No. 75.

1. REPLEVIN — *Evidence under a General Denial.* The gist of an action in replevin is the wrongful and unlawful detention of specific personal property, and on the trial of such action anything may be given in evidence, under a general denial by the defendant, which shows that he does not wrongfully detain possession of the property.

2. ANSWER — *Demurrer — Incomplete Record.* Where the court sustains a demurrer to one count set up in an answer and allows the party to amend his answer by interlineation, and the defendant immediately amends his answer, and a demurrer is filed to the amended answer and is overruled, and the record fails to show what the amendment consisted of, and the party afterward has the benefit of the amended answer on the trial of the case, *held,* that the record does not disclose any error in sustaining the demurrer to the original answer.

3. LANDLORD AND TENANT — *Landlord's Lien — Notice to Purchaser.* One who purchases a crop growing or made on leased fa m- ing lands, with notice of the landlord's lien, is liable to the landlord for the value of the crop purchased, and not to exceed the amount of rent due or payable. One who purchases the crop without notice of the claim of the landlord for unpaid rent takes it freed from all claims of the landlord.

4. SECRET LIENS — *Not Favored by Law.* Secret liens are not favored by our law. The legislation of this state has ever been against the right of a lien-holder to enforce his lien against an innocent purchaser of the property where he has not, in some of the modes prescribed by law, given notice of his lien.

MEMORANDUM.— Error from Butler district court; C. A. LELAND, judge. Action of replevin by J. H. Porter against William Scully. Judgment for plain-

tiff. Defendant brings the case to this court. Affirmed. The opinion herein was filed February 6, 1896.

. The statement of the case, as made by JOHNSON, P. J., is as follows :

On the 7th day of February, 1890, J. H. Porter commenced an action in replevin in the district court of Butler county, Kansas, against Charles Schram, sheriff of Butler county, to recover possession of 2,500 bushels of corn in the ear, in a crib upon a farm in Towanda township, in Butler county, Kansas. The sheriff of Butler county had seized this corn on the 3d of February, 1890, on an order of attachment issued in a case wherein William Scully was plaintiff and J. N. Bledsoe was defendant. This corn had been raised upon premises leased by William Scully to J. N. Bledsoe during the year 1889, and Bledsoe not having paid the rent to Scully, an order of attachment was procured by Scully, and the corn taken by the sheriff. Bledsoe had sold the corn to J. H. Porter. A small part of the corn had been delivered to Porter under this sale, but the greater portion of it was then in cribs on the premises where grown. The plaintiff's petition contained the following allegations :

"1. That said defendant is, and has been for more than one year last past, the duly qualified and acting sheriff of Butler county, Kansas.

"2. That this plaintiff is the owner of and entitled to the immediate possession of the following-described personal property, namely : 2,500 bushels of corn in the ear, in two cribs that adjoin each other, upon a farm in Towanda township in said county, occupied by J. N. Bledsoe, which said corn is worth the sum of 11 cents per bushel, and the total value of said corn being $275.

"3. Said defendant unlawfully took said corn from the possession of this plaintiff on the 3d day of February, 1890, and has ever since then and still does unlawfully detain said corn from the possession of this plaintiff. Although demanded, he still refuses to give up possession of the same.

"4. Said defendant has damaged this plaintiff in the sum of $100 by the said unlawful detention of said corn in this, that he thereby prevented this plaintiff from having the same to feed to his cattle, he being a dealer in cattle, and having said corn for the purpose of feeding to his said cattle ; and has been further damaged by having teams employed to haul said corn from where it is located to the feed lots of this plaintiff, near the town of Towanda in said county, a distance of about five miles."

After the filing of the petition and affidavit in replevin and the replevin of the corn, William Scully appeared, and filed his motion asking to be substituted as defendant in place of Charles Schram, sheriff, for the reason that he was the real party in interest. And afterward, to wit, on the 5th day of June, 1890, parties all being before the court, the application of Scully to be substituted as party defendant was sustained, and Scully was substituted as defendant, and at the same time filed his answer to the petition of the plaintiff, as follows :

"Now comes said defendant, William Scully, and for answer to the petition filed herein says :

"That he denies each and every allegation in said petition contained, except that Charles Schram now is, and for more than one year last past has been, the duly qualified and acting sheriff of Butler county, Kansas.

"And further answering, said defendant alleges that he now is, and for several years last past has been, the owner and in possession of the following-described farming lands, situated in the county of Butler and

state of Kansas, to wit: The southeast quarter of the southeast quarter of section 32, and the southwest quarter of section 33, all in township 26 south, range 4 east of the sixth principal meridian; that on the 27th day of October, 1886, said defendant leased said premises to J. N. Bledsoe for a term of five years, beginning on the 1st day of March, 1887, which said lease is hereto attached, marked 'Exhibit A,' and is hereby made a part hereof; that by the terms of said lease there was due and owing from said J. N. Bledsoe to the defendant, on the 3d day of February, 1890, the sum of $595.88, with interest thereon from said date at the rate of 10 per cent. per annum, for the payment of which sum this defendant had a lien on all crops growing or made upon said premises; that said corn replevied by plaintiff herein was a part of the crop grown and made on said premises during the year 1889, and subject to said lien, and was at the time of the commencement of this action upon said premises and had never been removed therefrom, and that the said Charles Schram had taken, and had at the time of the commencement of this suit, possession of said corn in a proceeding by said landlord for the purpose of enforcing said lien." •

To the second defense of this answer the plaintiff below demurred, for the reason that the facts stated did not constitute a cause of defense. This demurrer was sustained, and the plaintiff given leave to amend his answer by interlineation, which was amended, and the plaintiff below then demurred to the amended answer for the same reason.

This demurrer was by the court overruled, and the plaintiff below filed the following reply:

"Now comes said plaintiff, and, for his reply to the second cause of defense set up in the amended answer of defendants, says that he denies each and every allegation therein contained. For a further reply to said second cause of defense, this plaintiff says that he had no notice of any ownership or claim of owner-

ship on the part of Scully to the land described in said answer, and he had no notice and did not know that said Scully claimed any interest in or to the crops growing on said land, or to the corn involved in this suit; he did not know that Bledsoe was a tenant of Scully's, and that he purchased said corn in good faith, and paid a valuable consideration therefor.''

The plaintiff below then filed the following demurrer to the reply of plaintiff:

"Now comes defendant, William Scully, by Hazlett and Harris, his attorneys, and demurs to the second count of the reply of plaintiff filed herein.''

This demurrer was overruled by the court, to which order William Scully excepted.   The issues being fully joined, the cause was tried before the court and a jury, and resulted in a verdict and judgment for the plaintiff below; defendant made case and brings it here and asks for a reversal of the judgment.

*R. H. Hazlett*, and *C. L. Harris*, for plaintiff in error.
*Redden & Schumacher*, for defendant in error.

The opinion of the court was delivered by

JOHNSON, P. J.:  In 1887, William Scully, plaintiff in error, was the owner of a certain farm, containing about 200 acres, situated in Towanda township, Butler county, Kansas.   He leased this land by written lease to one J. N. Bledsoe for a period of five years, rents payable in cash annually, as specified in the written lease.   Bledsoe was in the occupancy of this farm from the time he leased it up to and including March 1, 1890.   In 1889 Bledsoe raised a crop of corn on the leased premises, and when it was gathered he placed the corn in two cribs on the farm where it was raised, being about 2,500 bushels.   About the 20th of Janu-

32—KAN. APP.

ary, 1890, Bledsoe sold the corn in the two cribs to J. H. Porter, defendant in error. On the 14th day of February, 1890, William Scully commenced an action against J. N. Bledsoe in the district court of Butler county, Kansas, to recover the rents then due on said farm and to enforce a lien therefor on the crops grown on the said farm in the year 1889. The corn, then still being in cribs on the farm, was attached by the sheriff, and while the sheriff held said corn under the attachment this suit in replevin was commenced to recover the possession of said corn.

Under the order of delivery issued on the commencement of this action, the coroner of Butler county took the corn out of the possession of the sheriff and delivered the same to J. H. Porter, plaintiff below. Plaintiff claimed to be the owner of the corn by virtue of a purchase from Bledsoe on or about the 20th day of January, 1890, and payment for which was made January 30, and without any notice that the corn was raised on leased lands, or that Scully had any lien upon the same. This suit was commenced by J. H. Porter, as plaintiff, against Charles Schram, as sheriff. After the commencement of the suit, William Scully, being the real party in interest, was, on motion, substituted as party defendant in this action, and said Scully appeared then and answered the petition of the plaintiff below, and all proceedings thereafter were had in the action between Porter and Scully. After issues were fully joined the case was tried before the court with a jury, and verdict and judgment were rendered for plaintiff below. Defendant below excepted, and brings case here for review.

The first error complained of by plaintiff in error is the sustaining of a demurrer of plaintiff below to the second defense set up in the answer of the defendant

below.    This assignment of error is not tenable, for, upon the sustaining of said demurrer, the court permitted the defendant below to amend the second defense by interlineation, and to the amended answer the plaintiff below renewed his demurrer, and it was overruled by the court.    The record fails to show the particular reason for sustaining the demurrer to the second defense set up in the original answer, or in what particular the amendment consisted, but it is evident that the amendment consisted in some slight correction in the phraseology in the second defense, and the defendant below had the benefit of the defense contained in the second defense in the original answer.    This action being in replevin, the defendant could show any defense that would make his possession lawful.    Therefore, the defendant in this case having a general denial to the answer, the other defenses set up in his answer were immaterial.

The second error complained of by the plaintiff in error is the overruling of the motion of defendant below to strike out the second count in the reply of plaintiff below and the overruling of the demurrer of defendant below to said second count of the reply of plaintiff below.    The second paragraph of the reply of plaintiff below, to which these objections are taken, is as fellows :

"For a further reply to said cause of defense this plaintiff says, that he had no notice of any ownership or claim of ownership on the part of Scully to the lands described in said answer, and he had no notice or did not know that said Scully claimed any interest in or to the crops grown on said lands, or to the corn involved in this suit; he did not know that Bledsoe was a tenant of Scully's, and that he purchased the corn in good faith and paid a valuable consideration therefor."

This brings us to a consideration of the statute respecting landlords and tenants, and the lien of a landlord on the crops grown on leased lands, and the effect of a sale of crops by tenant, grown on leased lands, where the rents have not been paid. Chapter 55 of the General Statutes of 1889, being "An act in relation to landlords and tenants," is, in part, as follows:

"Sec. 24. Any rent due for farming land shall be a lien on the crop growing or made on the premises. Such lien may be enforced by action and attachment therein, as hereinafter provided."

"Sec. 26. The person entitled to the rent may recover from the purchaser of the crop, or any part thereof, with notice of the lien, the value of the crop purchased, to the extent of the rent due and damages.

"Sec. 27. When any person who shall be liable to pay rent (whether the same be due or not, if it be due within one year thereafter, and whether the same be payable in money or other things) intends to remove, or is removing, or has, within 30 days, removed his property, or the crops, or any part thereof, from the leased premises, the person to whom the rent is owing may commence an action in the court having jurisdiction; and upon making an affidavit, stating the amount of rent for which such person is liable, and one or more of the above facts, and executing an undertaking as in other cases, an attachment shall issue in the same manner and with the like effect as is provided by law in other actions."

Under section 24, the landlord has a lien on the crops growing or made on the leased premises for rents due or payable on farming lands, and this lien may be enforced by attachment as provided in section 27. Section 26 makes the purchaser of the crop who purchased with notice liable to the landlord for the value of the crop purchased, not to exceed the amount of rent due.

The main question for consideration in this case is, Does the lien of the landlord affect the purchaser of the crop without notice of the landlord's lien? Or, in other words, can the tenant in possession sell the crops grown on the leased premises to a stranger who has no notice of the landlord's lien, and pass title to the crop to him freed from the lien? One who purchases the crop with notice of the landlord's lien is liable to pay the landlord the value of the crop purchased, not to exceed the amount of rent due or payable. It would seem to follow that one who purchased the crop without notice would take it freed from all claims or liens of the landlord. Secret liens are not favored by our law. The legislation of this state has ever been against the rights of lien-holders who do not in some of the modes prescribed by statute give notice of their lien. A party holding a lien on real estate may lose it if he does not have the same recorded in the office of the register of deeds of the county where the property is situated, or give actual notice in some manner to those about to deal with the owner thereof. It is so in cases of liens by mortgages or otherwise on personal property. If the instrument containing such lien is not filed in the office of register of deeds of the county where the property is situated, and a person purchases the same from the owner thereof who has possession of the property and has no knowledge of such lien, he takes it freed from the lien. A tenant who raises a crop on leased lands where he is required by the terms of his lease to pay cash rent, is the owner of the crops raised by him, subject only to the lien of the landlord for rents due or payable; but he may sell and dispose of the crop and pass a title to the purchaser, the purchaser being liable to pay the landlord the value of the crops purchased, if purchased with

notice of such lien. But if the purchaser has no notice of the lien of the landlord he takes them freed from any lien, unless he is in possession of such facts as would put a reasonably prudent person on inquiry as to whether the crops were raised on leased premises and whether the rents were paid. There was no error in the ruling of the court in overruling the motion to strike out, and in overruling the demurrer to the second count in the reply of the plaintiff below.

The final contention of the plaintiff in error is, that the court erred in the instructions given to the jury, and in refusing to instruct them as required by the defendant below. The argument in support of this assignment of error is based on the theory that the landlord is given a lien on crops grown or made on leased premises by virtue of the statutes of this state, and that it is a paramount lien which every person must take notice of. It is true the landlord has a lien created by statute on the crops grown on leased land, and the mode of enforcing it is prescribed by the same statute, and the statute creating the lien makes the purchaser liable to the landlord for the value of the crops purchased, when the same are purchased with notice of a lien. The construction claimed by plaintiff in error would render all purchasers of crops from a tenant liable to the landlord for the value of the crop purchased, whether they had notice of the lien or not.

We do not think that the landlord's lien is any more sacred than any other lien on personal property, or that every person dealing with the tenant must take notice of the lien of the landlord. In order to arrive at the meaning and intention of this statute we must construe the act as a whole, and give to each section and sentence a reasonable interpretation so

that the sense of each section, sentence and word may be fully gathered, and the internal sense of the whole may be understood.

On an examination of chapter 55, General Statutes of 1889, being "An act relating to landlords and tenants," we find it contains what shall constitute a tenant at will; how tenancies are created and determined; provisions for the occupancy of joint tenants and tenants in common; for the maintenance of actions for waste; the lien of landlords for crops grown or made on farming land; where rents are payable in a share or certain proportion of the crops, that the lessor shall be deemed to be the owner of such share; the manner of obtaining possession of such share if the lessee should refuse to deliver it over; that the person entitled to the rent may recover from the purchaser of the crop or any part thereof, with notice of the lien, the value of the crop purchased, to the extent of the rent due and damages; and then it provides the manner of enforcing the lien against the tenant. Giving to this entire act a fair construction, it is evident that the tenant is the owner of the crop grown or made on the leased premises, subject only to the lien given the landlord by law, and that this lien is subject to no higher rights than other liens on personal property, and persons dealing with the crop are held to no other or different rule than persons dealing with other personal property subject to liens. The tenant being the owner of the crop and in possession thereof may sell the same as he might any other property covered by a lien, and the title of the property would pass by such sale to the purchaser, and if he had notice of the lien he would be liable to the landlord for the value of the crops purchased; but if he is an innocent purchaser for value, without notice of any lien, he would take the

property free from the landlord's lien. The written lease in this case was not filed or recorded in the office of the register of deeds of Butler county, and there was nothing to give constructive notice of the landlord's claim on the crops, unless it was the fact that the corn was in cribs on the leased premises. We do not think this fact alone would be such as to put the purchaser on inquiry as to whom the land belonged, or as to whether Bledsoe was a tenant occupying the lands of some other person, or whether there were any claims against the crop for unpaid rents. Persons in possession of personal property are generally presumed to be the owners thereof, and the general presumption is that it is clear from incumbrance, unless there are some facts in connection with its use, location or condition that would be calculated to create suspicion, or to put ordinarily prudent persons on inquiry as to liens or claims against it, and, where there is nothing of record in some office provided for by law for giving constructive notice of a lien on personal property, and a person without notice, either actual or constructive, purchases the same in good faith and for a valuable consideration, he receives a good title to the same. We have examined the authorities cited by counsel for plaintiff and relied upon as authorities in this case, which were made in other states under similar statutes to ours, but find the fact of notice and the right of the tenant to sell crops are materially different from the provisions of the Kansas statutes, and do not think they are applicable to the facts in this case. They are not in accord with the general policy and decisions of our own state. The law respecting landlords and tenants in some of the states formerly gave the landlord a lien on all crops grown on the leased premises, and also

on all implements and animals used on the premises to raise the crops, and the courts in some of those states held that the tenant could not sell or dispose of any portion of the crop raised on the leased premises, or sell or dispose of any of the animals or farm implements used to make the crops, until all rents were fully paid, and that the purchaser of the animals that h id been used to make crops on leased lands must take notice of the lien, and the property might be followed into the hands of an innocent purchaser without actual notice, and taken and sold for the payment of rents ; that the purchaser took the property at his own risk, the same as the purchaser of stolen goods. These decisions are not authority under the laws of Kansas respecting the rights and liabilities of landlords and tenants, and are not in harmony with the general policy of our laws respecting parties dealing with property incumbered with liens.

The laws of England and of the earlier period of this country were intended for the special protection of the rights of the landlord, and the tenant's rights in every respect were subordinated to those of the owner of the soil, and the tenant did not seem to acquire any property rights in the crops grown by him on leased premises until the landlord had been paid his rents in full, but under more recent and humane legislation the severity of the laws as to tenants have been greatly modified and the tenant is given more consideration, and his rights are treated as equal with those of his landlord. He acquires an ownership in the crop raised by him, and he may use the same or sell it, subject to the lien of the landlord. The laws of some of the cotton states make it a criminal offense for a tenant to remove or sell any portion of the crop grown by him on leased premises until all the rents

have been paid; but the courts in some of these states hold that where he has removed the crop and sold it the purchaser takes the title freed from the lien of the landlord where he purchases without notice of the lien for unpaid rents.

We think the court below instructed the jury on the correct theory of the law applicable to this case, and the instructions requested by the defendant below did not contain the correct theory of the law. The jury, after being instructed on the law, having found the facts in favor of the plaintiff below, we cannot say that their verdict was not sustained by sufficent evidence.

The judgment of the district court is affirmed.

All the Judges concurring.